UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PID, LLC d/b/a PRESQUE ISLE DOWNS AND CASINO,** | Civil Action No. _____ |
| *Plaintiff*, | |
| v. | |
| **PENNSYLVANIA HORSEMEN'S BENEVOLENT AND PROTECTIVE ASSOCIATION INC.,** | |
| *Defendant*. | |

# COMPLAINT

Plaintiff PID, LLC d/b/a Presque Isle Downs and Casino ("PID" or the "Racetrack"), by and through its undersigned counsel, for its Complaint against Defendant Pennsylvania Horsemen's Benevolent and Protective Association Inc. ("PA HBPA" or the "Horsemen") hereby avers as follows:

## NATURE OF ACTION

1. This is an action seeking a declaration, pursuant to 28 U.S.C. § 2201, of the parties' respective rights in relation to an arbitration provision contained in a February 22, 2007 agreement concerning live thoroughbred racing ("Live Racing Agreement" or "Agreement"), as amended from time to time by the parties.

2. PA HBPA has asserted unsupported allegations of breach of the Live Racing Agreement by PID, seeking in excess of $75,000 beyond the contractually negotiated and agreed-on percentage of revenue sharing as to source market fees that PID receives under a collateral agreement entered into in October of 2018 with a vendor who is a separate legal entity. PID has

been, and remains, in compliance with its contractual obligations to PA HBPA under the parties' freely-negotiated Agreement concerning live thoroughbred racing.

3. PA HBPA has sought to submit to arbitration these unsupported allegations of breach under the narrow arbitration provision contained in the Live Racing Agreement.

4. PID and PA HBPA did not agree that an arbitrator, rather than a court, will resolve threshold arbitrability questions.

5. PA HBPA's asserted allegations are outside of the scope of the narrow and unambiguous arbitration provision agreed to by the parties in the Live Racing Agreement.

6. PA HBPA's asserted allegations of breach are nothing more than a money grab without legal merit. Rather than raising questions as to PID's compliance with the terms of the Live Racing Agreement, PA HBPA's asserted allegations are an attempt to renegotiate through arbitration a long standing contractual provision, that with the benefit of hindsight and changed circumstances, they now disfavor. In essence, PA HBPA alleges that the source market fee received by PID from the collateral agreement is too low.

7. PA HBPA's asserted allegations take issue with PID's collateral agreement, but the Horsemen never negotiated into the Live Racing Agreement any consent or veto rights concerning the source market fee flowing to PID from the collateral agreement. Further, the Live Racing Agreement does not set a required rate or amount for source market fees that PID must receive from a vendor. Indeed, on information and belief, prior to the collateral agreement, PA HBPA received no money whatsoever from a source market fee under the Live Racing Agreement. In contrast, what PA HBPA did negotiate into the Live Racing Agreement was that *if* PID received a source market fee from a vendor, then PA HBPA would get a fixed percentage of that source market fee. PID has paid to PA HBPA that contractually negotiated percentage of the source

market fee it receives from the collateral agreement. Moreover, PA HBPA has further admitted in the course of recent negotiations concerning a seventh amendment to the parties' Agreement that the contract did not provide the Horsemen with the right to approve or consent to the aggregate amount of source market fees that PID receives.

8. As demonstrated herein, there now exists between the parties an actual justiciable controversy related to the arbitrability of PA HBPA's asserted allegations. This Court should enter a declaratory judgment and such other and further relief as it deems appropriate holding that PA HBPA's asserted allegations arise from the collateral agreement and not from the Live Racing Agreement, and as such, they are outside the scope of the narrow arbitration clause contained in the Live Racing Agreement.

**PARTIES**

9. PID is a Pennsylvania Limited Liability Company with its principal place of business in Erie, Pennsylvania. PID's sole member is HCRH, LLC, a Delaware Limited Liability Company which is owned by Churchill Downs Incorporated, a Kentucky Corporation with its principal place of business at 600 North Hurstbourne Parkway, Suite 400, Louisville, Kentucky.

10. PID is therefore a citizen of Kentucky for jurisdictional purposes.

11. Upon information and belief, Defendant PA HBPA is a Pennsylvania not-for-profit corporation with its principal place of business in Grantville, Pennsylvania. PA HBPA is a citizen of Pennsylvania for jurisdictional purposes.

**JURISDICTION AND VENUE**

12. This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum value of $75,000, exclusive of interest and costs, and is between citizens of different states.

13. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and 28 U.S.C. § 1391(d) because this Court has personal jurisdiction over PA HBPA by virtue of the Horsemen's contacts with this judicial district as described below.

## FACTUAL BACKGROUND

14. PID is located on 270 acres in Erie, Pennsylvania. PID owns and operates a 153,000 square-foot casino with approximately 1,550 slot machines, 34 table games, a retail sportsbook, a poker room, and four dining facilities. PID also conducts 100 live thoroughbred racing days each year.

15. According to its own website, PA HBPA provides services for horsemen at both Penn National in Grantville, Pennsylvania and Presque Isle Downs in Erie, Pennsylvania. Based in Grantville, Dauphin County, PA HBPA is composed of a president, board of directors (five owners and five trainers), executive director and staff who run the day-to-day operations at each racetrack.

16. On information and belief, PA HBPA has members that reside in the Eastern District of Pennsylvania, directs its activities to its members within this judicial district, advertises its services in this judicial district, receives revenue through PID from customers that reside in this judicial district, and regularly conducts business in this judicial district.

17. PID and PA HBPA entered into a Presque Isle Downs Live Racing Agreement on February 22, 2007. A true and correct copy of the Live Racing Agreement is attached hereto as Exhibit 1 and incorporated herein.

18. The parties amended the Live Racing Agreement by executing the First Amendment to Live Racing Agreement dated April 3, 2009 (the "First Amendment"). A true and correct copy of the First Amendment is attached hereto as Exhibit 2 and incorporated herein.

19. The parties further amended the Live Racing Agreement by executing the Second Amendment to Live Racing Agreement dated May 31, 2010 (the "Second Amendment"). A true and correct copy of the Second Amendment is attached hereto as Exhibit 3 and incorporated herein.

20. The parties further amended the Live Racing Agreement by executing the Third Amendment to Live Racing Agreement dated April 17, 2012 (the "Third Amendment"). A true and correct copy of the Third Amendment is attached hereto as Exhibit 4 and incorporated herein.

21. The parties further amended the Live Racing Agreement by executing the Fourth Amendment to Live Racing Agreement dated April 29, 2013 (the "Fourth Amendment"). A true and correct copy of the Fourth Amendment is attached hereto as Exhibit 5 and incorporated herein.

22. The parties further amended the Live Racing Agreement by executing the Fifth Amendment to Live Racing Agreement dated March 17, 2014 (the "Fifth Amendment"). A true and correct copy of the Fifth Amendment is attached hereto as Exhibit 6 and incorporated herein.

23. The parties further amended the Live Racing Agreement by executing the Sixth Amendment to Live Racing Agreement dated August 4, 2015 (the "Sixth Amendment"). A true and correct copy of the Sixth Amendment is attached hereto as Exhibit 7 and incorporated herein.

24. The parties further amended the Live Racing Agreement by executing the Seventh Amendment to Live Racing Agreement dated May 1, 2021 (the "Seventh Amendment"). A true and correct copy of the Seventh Amendment is attached hereto as Exhibit 8 and incorporated herein.

25. Pursuant to the Live Racing Agreement, PID is to pay to PA HBPA a fixed percentage of all "source market fees" received from an electronic media wagering system *the majority of which is <u>not</u> owned by PID*:

> In the event of such forms of wagering for purposes of determining the amount to be paid to the Horsemen's purse account, a telephone account wager or other wager

made on races conducted at the Host Facility [the Racetrack] through an electronic media wagering system, the majority of which is owned by the Racing Association [PID], shall be deemed to be made at the Racing Association [PID] as an on-track wager, and revenues received by the Racing Association [PID] therefrom shall be allocated and paid to the Horsemen's purse account in accordance with the On-track Purse Percentages set out herein.  33 1/3 % of any source market or similar fees, or any other fees, no matter what they may be called or how characterized, received by the Racing Association [PID] from telephone account or electronic media wagering systems remunerating the Racing Association [PID] for market impact occurring by virtue of such wagers being made in defined geographical area to be determined at the time of source market fee agreement on races being imported by the Racing Association [PID] via simulcast signals from within or outside of Pennsylvania shall be allocated and paid to the Horsemen's purse account.  For purposes of this Agreement, the term "source market or similar fees" shall include, but not be limited to, any and all fees or revenues paid to the Racing Associations [PID] and/or its horsemen by Television Games Network or any other account wagering, electronic media or other remote wagering entities for the right to accept wagers from account holders located in defined geographical area to be determined at the time of source market fee agreement.  For the avoidance of doubt, the "source market or similar fees" received by Racing Association [PID] in connection with telephone account, electronic media, or other forms of remote wagering with respect to live racing conducted at the Host Facility [the Racetrack] shall be subject to the Revenue Sharing provisions set forth above.

See Live Racing Agreement § 5.c.ii.

26. PID entered into a Racing Services Vendor Agreement with Churchill Downs Technology Initiatives Company d/b/a TwinSpires ("CDTIC") on November 14, 2018 (the "Vendor Agreement").  A true and correct copy of the Vendor Agreement is attached hereto as Exhibit 9 and incorporated herein.

27. Pursuant to the Vendor Agreement, PID is to receive a source market fee of a fixed percentage of the gross handle of all wagers less any refunds or cancellations on all races facilitated by CDTIC that are placed by CDTIC account holders who are Pennsylvania Market Residents. See Vendor Agreement § 2.

28. PID does not own the majority of CDTIC.

29. CDTIC is a separate legal entity from PID.

30. At all times relevant to this Complaint, PID has paid to PA HBPA the contractually negotiated percentage of the source market fee it has received from CDTIC under the Vendor Agreement.

31. On information and belief, prior to the execution of the Vendor Agreement on November 14, 2018, no source market fees were received by PID on advance-deposit wagering ("ADW"), and as such, PA HBPA did not receive any revenue from such source market fees under the Live Racing Agreement.

32. The Live Racing Agreement contains a *narrow* arbitration clause which limits the scope of disputes subject to arbitration to those regarding the performance or interpretation of the Agreement:

> In the event that there is a disagreement between the parties as to whether any party has complied with the terms or conditions in this Agreement, then the Associations [PID] shall choose an Arbitrator and the PA HBPA shall choose an Arbitrator. The two Arbitrators shall choose a third Arbitrator, and the Board of Arbitrators shall decide the issues involved and each party agrees to be bound by the decision of the arbitration panel, except with respect to questions of federal law. No action shall be taken by the PA HBPA prohibited by paragraph 18(a) unless and until the Arbitrators have determined that Associations [PID] are not in compliance with the terms hereof.

See Live Racing Agreement § 18.b.

33. As evident by the plain language of the narrow arbitration clause, PID and PA HBPA did not agree that an arbitrator, rather than a court, will resolve threshold arbitrability questions.

34. On August 14, 2020, PA HBPA sent a letter to PID seeking to submit to arbitration six "unresolved issues" with PID (the "Arbitration Election Letter"). A true and correct copy of the Arbitration Election Letter is attached hereto as Exhibit 10 and incorporated herein.

35. On June 3, 2021, PA HBPA sent a letter to PID again seeking to submit to arbitration the same six "unresolved issues" with PID that are enumerated in the Arbitration

7

Election Letter. A true and correct copy of the June 3, 2021 letter is attached hereto as Exhibit 11 and incorporated herein.

36. While the six "unresolved issues" enumerated in the Arbitration Election Letter are cast by PA HBPA as five alleged breaches of various sections of the Live Racing Agreement as well as an alleged breach of the covenant of good faith and fair dealing, the factual underpinnings of these six purported claims can be reduced to a single factual allegation which is described by PA HBPA in the Arbitration Election Letter as "stemming from PID's provision of advance-deposit wagering ('ADW') services through its 'racing vendor' and corporate affiliate Churchill Downs Technology Initiatives Company d/b/a TwinSpires ('CDTIC')." See Arbitration Election Letter at p. 1, ¶ 2.

37. In essence, PA HBPA alleges that the source market fee received by PID from CDTIC under the Vendor Agreement is too low.

38. Although cast by PA HBPA as breach of contract claims, this single factual allegation is not within the scope of the narrow arbitration agreement as the facts underpinning PA HBPA's "unresolved issues" do not relate to the performance by PID of the Agreement.

39. Indeed, PID has always complied with the Agreement by paying PA HBPA the contractually negotiated percentage of all "source market fees" it received under the Vendor Agreement.

40. By way of further example, as one of PA HBPA's six "unresolved issues" enumerated in its Arbitration Election Letter, PA HBPA alleges:

> PID has breached and is currently breaching the legislative amendments to the Racing Act that have been incorporated by reference into the Live Racing Agreement by way of Section 4.d, which provides, in pertinent part: "During the term of this Agreement, the Racing Association and the PA HBPA shall allocate and pay purse moneys as provided by this agreement, including any additional percentage of the pari-mutual handle which may be legislated and incorporated into

      the PA Race Horse Industry Reform Act statute during the period of this Agreement, if specifically legislated for purses…." By operation of this language, all legislative amendments to the Racing Act specific to purses have been incorporated into the Live Racing Agreement, including Sections 9331(d) and 9356(b)(2) of the Racing Act, 3 Pa. C.S. §§ 9331(d), 9356(b)(2), which were added as amendments to the Act in 2016.  Therefore, at a minimum, PID is in breach of the Live Racing Agreement in any instance where PID fails to pay PA HBPA "an amount equal to but no less than 6% of the gross wagering handle" in connection with the ADW services PID provides through its 'racing vendor' and corporate affiliate CDTIC.

See Arbitration Election Letter at pp. 3-4, ¶ 4.

41. This allegation is clearly outside of the scope of the arbitration clause—limited to the question of whether a party has complied with "the terms or conditions *in this Agreement*"—and asserts breach of a purported statute.

42. In addition to being outside the scope of the narrow arbitration clause, the Horsemen's allegation is also false as during the vendor licensing process, the Director of Licensing for the Pennsylvania Horse Racing Commission specifically stated in an October 1, 2018 email that the 6% purse contribution requirement in the legislative amendments that PA HBPA refer to in its Arbitration Election Letter does not apply to the Vendor Agreement which was being negotiated between PID and CDTIC at the time.  A true and correct copy of the October 1, 2018 email is attached hereto as Exhibit 12 and incorporated herein.

43. The Vendor Agreement is a collateral agreement that does not arise out of the Live Racing Agreement.

44. Because PA HBPA's "unresolved issues" arise from a collateral agreement, they are not subject to the narrow arbitration clause agreed to by the parties in the Live Racing Agreement.

45. With regards to the "merits" of their claims against PID, the Horsemen are simply wrong and their interpretation of the Live Racing Agreement is not supported by its text.

9

46. The Live Racing Agreement does not set a required rate or amount for source market fees that PID must receive from a vendor on advance-deposit wagering.

47. The Live Racing Agreement does not reserve to PA HBPA any negotiation or consent rights regarding source market fees received by PID from a vendor on ADW.

48. The Live Racing Agreement was amended seven times since its execution in 2007 and none of those amendments changed the terms of Section 5.c.ii governing the revenue sharing of source market fees received on ADW.

49. The Horsemen recently admitted that, under the Live Racing Agreement, they do not have any right to negotiate or seek a higher percentage of the source market fees that PID receives from an ADW vendor.

50. Specifically, in or around March of 2021, in the course of negotiations over the Seventh Amendment, the Horsemen specifically sought to amend § 5 of the Live Racing Agreement to state as follows:

The first sentence of subsection ii is amended to read as follows:

ii. <u>Telephone Account, Electronic Media, or Other Forms of Remote Wagering Revenue</u>. In the event of such forms of wagering for purposes of determining the amount to be paid to the Horsemen's purse account, a telephone account wager or other wager made on races conducted at the Host Facility through an electronic media wagering system, shall be deemed to be made at the Racing Association as an on-track wager, and revenues received by the Racing Association therefrom shall be allocated and paid to the Horsemen's purse account in accordance with the On-track Purse Percentage set out herein.

iii. With respect to pari-mutuel wagers placed by residents of Pennsylvania, other than on races conducted at the Racing Association, through an electronic media wagering system operated by Racing Association or its affiliate or its racing services vendor, six percent (6.0%) of the gross handle of such wagers less any refunds or cancellations shall be paid to the Horsemen's purse account. Payments shall be made monthly within 30 days following the end of each calendar month.

Paragraph 5 of the Agreement is amended by adding a new paragraph d. as follows:

d. Any wagering commissions not currently under contract, not adopted into statute during the term of this Agreement or that is proposed from one of the parties ("New Revenue"), shall be negotiated between the parties at a mutually agreed upon rate that results in the horsemen receiving between 33.3% and 50% of such net revenue. To the extent there are new expenses associated with the "New Revenue", such expenses will be allocated at the same percentage as the "New Revenue" is allocated.

51. PID rejected each of these changes to the Live Racing Agreement.

52. At all times relevant to this Complaint, PID has paid to PA HBPA the contractually negotiated percentage of the source market fee that it has received from CDTIC under the Vendor Agreement—the only amounts due and owing to the Horsemen, and which have always been accepted.

53. In sum, PA HBPA has not stated in its Arbitration Election Letter a valid claim against PID under the Live Racing Agreement related to the single factual issue of "PID's provision of advance-deposit wagering ('ADW') services through its 'racing vendor' and corporate affiliate Churchill Downs Technology Initiatives Company d/b/a TwinSpires ('CDTIC')" and further failed to state any claim(s) relating to PID's compliance with the Agreement that would be eligible to submit to arbitration under the narrow arbitration clause agreed to by the parties.

## COUNT I
## (DECLARATORY JUDGMENT)

54. PID restates and incorporates herein by reference the averments set forth in paragraphs 1 through 53 above.

55. A justiciable controversy exists between the parties with respect to their rights in relation to the arbitrability of PA HBPA's asserted allegations.

56. A declaratory judgment will clarify and settle the legal relations at issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to this proceeding.

57. PID is entitled to a declaration that PA HBPA's asserted "unresolved issues" in its Arbitration Election Letter arise from the collateral agreement and not from the Live Racing Agreement, and as such, there is no claim(s) to submit to arbitration under the narrow arbitration clause agreed to by the parties in the Live Racing Agreement.

**WHEREFORE**, Plaintiff, PID, LLC d/b/a/ Presque Isle Downs and Casino, respectfully requests that the Court:

(a) Enter judgment according to the declaratory relief sought;

(b) Award PID its costs and fees in this action to the extent permitted by law; and

(c) Enter such other and further relief as this Court may deem proper.

Respectfully submitted,

Dated: June 24, 2021

Nipun Patel (PA Attorney I.D. No. 208130)
Patrick J. McCabe (Pa Attorney I.D. No. 203910)
HOLLAND & KNIGHT LLP
2929 Arch Street
Suite 800
Philadelphia, PA 19104
Tel.    (215) 252-9600
Fax    (215) 867-6070
Nipun.Patel@hklaw.com
Patrick.McCabe@hklaw.com

*Counsel for Plaintiff*
*PID, LLC d/b/a Presque Isle Downs and Casino*